

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 1 8 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TRANSCOM ENHANCED          §
SERVICES, INC.,            §
                           §
        Plaintiff,         §
                           §
VS.                        §   NO. 4:09-CV-755-A
                           §
QWEST CORPORATION,         §
                           §
        Defendant.         §

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion of defendant, Qwest

Corporation, to dismiss the Lanham Act claim brought by plaintiff,

Transcom Enhanced Services, Inc., for failure to state a claim

upon which relief may be granted pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Having considered the filings

of the parties, the pleadings, and applicable legal authorities,

the court concludes that the motion should be granted.

I.

Plaintiff's Claims

The essence of the first amended complaint ("Complaint") is

that defendant has falsely accused plaintiff of masking toll

calls as local calls to avoid paying defendant access charges.

The Complaint details the technical aspects of the services

provided by plaintiff and defendant and how those services are organized within the provisions of the Communications Act, 47 U.S.C. § 151 et seq., and the corresponding regulations. Following is a summary of the pertinent factual allegations in the Complaint, which the court accepts as true for purposes of deciding a motion to dismiss:

Plaintiff contends it is an Enhanced Service Provider in the telecommunications industry and provides "Voice over Internet Protocol" ("VoIP") services to its customers, including enhanced features and functions not available to purchasers of basic telecommunications services.[1]  Compl. at 4.  When a customer uses plaintiff's services to place a call, plaintiff changes the form and content of the customer's call and sends it for transmission to a competitive local exchange carrier.[2]  The competitive local exchange carrier then either sends the call, as changed, to the intended recipient, or "redirects it to an incumbent local exchange carrier . . . (such as [defendant]) for termination to the intended recipient."  Id. at 4-5.

---

[1]Generally speaking, "VoIP" service is telephone service provided over the public Internet or over a private "Internet Protocol" network.  The Complaint provides significantly more detail concerning "VoIP" service, not pertinent to the resolution of the motion to dismiss.

[2]A "local exchange carrier" is defined as "any person that is engaged in the provision of telephone exchange service or exchange access."  Compl. at 6-7 n.11, citing 47 U.S.C. § 153(26).

2

Plaintiff contends it is not a telecommunications carrier and provides no telecommunications services, but rather obtains telecommunications services from a carrier. Plaintiff, as an Enhanced Service Provider, is an "end user" customer of the telecommunications services provided by carriers. As an end user, plaintiff is required to pay only "end user" charges to connect to the public switched network. <u>Id.</u> at 6. In contrast, providers of "telecommunications services," including providers of telephone toll service, must pay access charges in order to connect to the public switched network. <u>Id.</u> at 6 and n.9.

If an "end user" served by one local exchange carrier attempts to place a call with a customer served by another local exchange carrier, the two local exchange carriers cooperate to complete the call, and the carrier that terminates the call to its customer is paid by the originating local exchange carrier. When two local exchange carriers collaborate on delivery of a "telephone toll" call delivered by an "interexchange carrier," each local exchange carrier separately bills the interexchange carrier for its services. <u>Id.</u> at 7.

Defendant is a local exchange carrier, as is Electric Lightwave, LLC ("Electric Lightwave"). Plaintiff must maintain relationships with such carriers because it is not a carrier and

cannot "directly deliver traffic to a called party on the public switched network." Id. at 7-8. In July 2005, plaintiff and Electric Lightwave entered into an agreement whereby plaintiff would deliver calls to Electric Lightwave for termination in Electric Lightwave's coverage area. Electric Lightwave, in turn, had a relationship with defendant, whereby Electric Lightwave delivered telecommunications to defendant, and defendant delivered them to the final recipient of the call.

Plaintiff first learned in 2006 that defendant was "spreading allegations in the telecom industry" that plaintiff was masking toll calls and otherwise avoiding paying access charges through fraudulent conduct. Id. at 8. Defendant claimed plaintiff was required to pay access charges to defendant and to any other local exchange carrier that might collaborate in delivering plaintiff's originating calls to the intended recipient. Plaintiff at the time was emerging from bankruptcy, so in order to avoid the expense of litigation, plaintiff decided to route to Electric Lightwave only such telephone traffic as would raise no doubts that plaintiff was not subject to payment of access charges.

Despite plaintiff's efforts, by letter dated October 30, 2006, defendant accused plaintiff of attempting to avoid

$1,438,444.90 in access charges.  Plaintiff responded with its own letter and provided defendant "copies of rulings from a court of competent jurisdiction" determining that plaintiff is an Enhanced Service Provider exempt from paying access charges.  Id. at 9.  Shortly thereafter, by letter dated December 19, 2006, Electric Lightwave informed plaintiff that plaintiff was in default, as Electric Lightwave had learned from defendant that plaintiff was engaging in conduct intended to avoid payment of access charges.  Plaintiff responded to both defendant and Electric Lightwave, demanding that both companies cease and desist from communicating to any third party that plaintiff was engaged in unlawful conduct.  Defendant sent plaintiff a letter rejecting plaintiff's claims, and Electric Lightwave notified plaintiff that it intended to disconnect service to plaintiff.

In a conference call on March 9, 2007, between Electric Lightwave and plaintiff, Electric Lightwave informed plaintiff that it had received bills from defendant for unpaid access charges in the amount of $3,000,000, approximately seventy percent of which related to traffic terminated by plaintiff. Electric Lightwave refused plaintiff's request for copies of the bills and declined to confirm in writing that defendant's accusations were the basis for the disconnection notice.  By

5

letter dated March 15, 2007, Electric Lightwave informed plaintiff that it was declining to renew plaintiff's contract as it had decided to "exit this business." Id. at 11.  Several months later, one of plaintiff's sales representatives was rebuffed in his efforts to establish a customer relationship with Integra Telecom, the successor in interest to Electric Lightwave, based on the previous accusations of toll avoidance.

Defendant also filed suit against a number of defendants, including plaintiff, in the United States District Court for the Western District of Washington, accusing all of the defendants in that action of "engaging in fraud to mask toll calls for the purpose of avoiding access charges." Id. at 12.  Plaintiff was eventually dismissed from the Washington action for lack of personal jurisdiction.

In the Complaint, plaintiff brings claims for injunctive relief, declaratory judgment, libel and slander, tortious interference with existing and prospective contracts and contractual relations, violations of sections 201-203 of the Communications Act, and violations of the Lanham Act.

II.

## Grounds of the Motion

Defendant seeks dismissal only of plaintiff's claim under
the Lanham Act, 15 U.S.C. § 1125(a).   Defendant contends that
plaintiff has failed to allege facts to establish, or even
suggest, that the identified communication constitutes
"advertising" or "promotion" within the meaning of the Lanham
Act, and that plaintiff has failed to allege that defendant made
any statements that were literally false or likely misleading as
would support Lanham Act liability.

III.

## Applicable Legal Principles

The standards for deciding a motion to dismiss for failure
to state a claim are well-settled.   The court's task is to
determine "not whether a plaintiff will ultimately prevail but
whether the claimant is entitled to offer evidence to support the
claims."   Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   In Conley
v. Gibson, 355 U.S. 41 (1957), the Supreme Court said that a
complaint "should not be dismissed for failure to state a claim
unless it appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would entitle him to
relief."   355 U.S. at 45-46.   However, the Supreme Court has held

7

that it did not quite mean its "no set of facts" statement in Conley. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 561-63 (2007) (stating that the <u>Conley</u> "no set of facts" statement "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival," at 563).

In evaluating whether the complaint states a viable claim, the court construes the allegations of the complaint favorably to the pleader. <u>Scheuer</u>, 416 U.S. at 236. However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. <u>Bell Atl.</u>, 550 U.S. at 555 (stating that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations, brackets, & quotation marks omitted)); <u>Guidry v. Bank of LaPlace</u>, 954 F.2d 278, 281 (5th Cir. 1992). On a motion to dismiss for failure to state a claim, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

IV.

Analysis

The Lanham Act provides, in pertinent part, that

(1) Any person who, on or in connection with any goods
or services . . . uses in commerce any word, term,
name, symbol, or device, or any combination thereof, or
any false designation of origin, false or misleading
description of fact, or false or misleading
representation of fact, which–

. . .

(B) in commercial advertising or promotion,
misrepresents the nature, characteristics,
qualities, or geographic origin of his or her or
another person's goods, services, or commercial
activities,

shall be liable in a civil action by any person who
believes that he or she is or is likely to be damaged
by such act.

15 U.S.C. § 1125(a)(1)(B).

A plaintiff alleging a claim of false advertising under the

Lanham Act must establish, inter alia, that a party made a false

or misleading statement of fact about his own or another's

product "in the context of 'commercial advertising or

promotion.'"   Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1383

n.3 (5th Cir. 1996); Pizza Hut, Inc. v. Papa John's Int'l, Inc.,

227 F.3d 489, 494-95 (5th Cir. 2000).  For a statement to

constitute "commercial advertising or promotion," the statement

must be (1) commercial speech, (2) by a defendant in commercial competition with the plaintiff, (3) "for the purpose of influencing consumers to buy defendant's goods or services," and (4) sufficiently disseminated to the relevant purchasing public to constitute "advertising" or "promotion" within the relevant industry. <u>Seven-Up Co.</u>, 86 F.3d at 1384. Defendant contends that plaintiff has failed to properly plead the second, third, and fourth of the above-cited elements.

The court agrees that plaintiff has failed to allege that any statements of defendant were for the purpose of influencing consumers to buy defendant's goods or services. Defendant maintains that the only communications at issue in the Complaint are those between defendant and Electric Lightwave concerning defendant's attempts to collect access charges on long-distance calls delivered by Electric Lightwave to defendant for termination. According to defendant, the Complaint does not allege that those communications were for the purpose of influencing consumers to buy defendant's goods or services or were for any purpose other than to enforce defendant's rights to collect access charges. Defendant further contends that the Complaint does not allege that the communications with Electric Lightwave contained any "marketing or sales pitch," Def.'s Mot.

10

at 5-6, citing <u>Futuristic Fences, Inc. v. Illusion Fence Corp.</u>,
558 F. Supp.2d 1270, 1280-82 (S.D. Fla. 2008), and <u>Avery Dennison</u>
<u>Corp. v. Acco Brands, Inc.</u>, 2000 WL 986995 (C.D. Cal. Feb.22,
2000). The courts in both <u>Futuristic Fences</u> and <u>Avery Dennison</u>
concluded that cease-and-desist-type letters, sent by the
defendants to the plaintiffs' customers, were for the purpose of
enforcing the defendants' legal rights, rather than for use as a
marketing or sales tool meant to influence customers to buy the
defendants' goods or services. Defendant contends that its
communications with Electric Lightwave, like the ones in
<u>Futuristic Fences</u> and <u>Avery Dennison Corp.</u>, were for the purpose
of enforcing defendant's legal rights, rather than influencing
Electric Lightwave to purchase any of defendant's goods or
services.

In response, plaintiff argues primarily that the Fifth
Circuit has not adopted defendant's argument that the alleged
communications must contain "any marketing or sales pitch,"
Pl.'s Resp. at 6, and that the issue is not appropriate for a
motion to dismiss.

Whether or not the Fifth Circuit would specifically require
a "marketing or sales pitch," a review of the Complaint makes
clear that plaintiff has failed to allege that defendant made any

communication for the purpose of persuading Electric Lightwave, or anyone else, to purchase defendant's goods or services. Plaintiff, in its response, failed to direct the court to any such allegations.  Further, the court agrees with defendant that plaintiff could not logically tender such an allegation, as the Complaint alleges that plaintiff was the customer of Electric Lightwave, not the other way around.

Plaintiff's response appears to provide an expanded explanation of why and how defendant is attempting to eliminate plaintiff as a competitor in the VoIP market.  The difficulty for plaintiff is that the Complaint contains none of the factual allegations present in the response.  At most, the Complaint makes only the conclusory allegation that defendant, "directly or through affiliates or subsidiaries, is a competitor in the VoIP market," and wants to eliminate competitors.  Compl. at 3. However, the Complaint offers no facts to support this allegation, nor does it allege facts to show how any of defendant's communications were "made to persuade any consumer to purchase defendant's goods or services."  While plaintiff need not plead detailed factual allegations to survive a motion to dismiss, it must plead more than conclusory assertions or legal conclusions couched as factual allegations.

The court need not reach the remaining arguments in the motion to dismiss, as plaintiff's failure to plead facts showing that defendant made any statement "for the purpose of influencing consumers to buy defendant's goods or services" is dispositive of plaintiff's Lanham Act claim.

V.

Order

Therefore,

The court ORDERS that defendant's motion to dismiss be, and is hereby, granted, and that plaintiff's claim pursuant to the Lanham Act be, and is hereby, dismissed.

SIGNED June 18, 2010.

JOHN McBRYDE
United States District Judge